Dear Ms. Landrieu:
You have requested an opinion of the Attorney General relative to the interpretation of certain provisions of Act No. 1097 (House Bill No. 1201) of the 1992 Regular Session of the Louisiana Legislature which enacted LSA-R.S. 30:961-979 — the Louisiana Noncoal Surface Mining Law. You note a possible inconsistency between Subsections (E) and (I) of Section 967, the former requiring the deposit of permit fees in a "Noncoal Mine Land Reclamation Fund" (NMLRF) and the latter requiring all fees levied under Section 967 to be placed in the state general fund.
You state that you have been advised by representatives of the Department of Natural Resources (DNR) that they are ready to proceed to collect the subject fees in accordance with Act 1097, and request our opinion as to the proper fund to deposit same.
As stated above, Act 1097 enacted the Louisiana Noncoal Surface Mining Law, the purposes of which is to provide for the reclamation and conservation of land which is, or has been, subjected to noncoal surface mining operations. These purposes are to be accomplished with funding from several sources: (1) grants from the federal government ( § 966), (2) monies appropriated by the state legislature ( § 966), (3) permit application and transfer fees ( § 967), (4) reclamation fees ( § 972), and (5) civil fines ( § 975).
LSA-R.S. 30:967(B) requires prospective and current operators of surface mining operations to apply for, and obtain, a permit, before engaging in such operations. Section 967(E) provides, in pertinent part, the following:
 "E. Each application for a permit under Subsection B of this Section shall be accompanied by a fee of one thousand dollars, which shall be deposited in the Noncoal Mine Land Reclamation Fund of the state treasury."
Section 967(G) and (H) levy additional fees for filing amended and transfer permits, respectively.
Section 967(I) provides:
 "All fees levied pursuant to this Section and collected shall be placed in the state general fund."
The issue presented is whether an irreconcilable conflict exists between Subsections (E) and (I), as quoted above, and, if so, which provision is controlling.
A review of the legislative history of House Bill No. 1201 reflects that the original bill provided for the establishment of the NMLRF in the state treasury, into which all sources of funding mentioned hereinabove were to be deposited. However, House Committee amendments were adopted which stripped all reference to the NMLRF from the body of the bill, with the exception of Section 967(E), and substituted "state general fund." The enrolled bill retained these amendments.
It is obvious that the Legislature, through oversight, inadvertently failed to delete reference to the NMLRF in Section 967(E). We believe the oversight to be merely a clerical error.
Rules of statutory construction clearly provide that clerical errors shall be disregarded when the meaning and intent of the legislature is clear. LSA-R.S. 1:5 and State v. Rogers 148 La. 653, 87 S. 504 (1921).
It is our opinion that the legislature clearly intended that all sources of revenue generated under the provisions of Act 1097 be deposited in the state general fund.
Further, it is our opinion that, in deleting the language in the original bill which established the NMLRF, the House Committee amendments disestablished said fund. The language inadvertently carried over in Section 967(E) merely refers to a nonexistent fund — it does not create it.
Trusting this to be of sufficient information, I am,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III:lbw-0008R