Dear Mr. Woodard:
You have asked this office to advise which governmental body has the authority to select and employ the Executive Director of the Beauregard Tourist Commission.
The Beauregard Tourist Commission is created pursuant to R.S. 33:4574
(A)(2)(g), which provides:
 (2) Pursuant to Article VI, Sections 19 and 30 of the Constitution of Louisiana, the following commissions and bureaus, hereafter collectively referred to in this Chapter as "tourist commissions" or "commissions", are hereby specifically created as special districts or commissions. Each such commission shall be a body politic and corporate and a political subdivision of the state of Louisiana, composed of the following territory:
* * * * *
 (g) Beauregard Tourist Commission composed of all the territory in Beauregard Parish.
Of further interest is R.S. 33:4574.3 (B)(2) stating:
 B. (1) The provisions of R.S. 33:4574 (A)(2), 4574.1-A, and R.S. 33:4574.5 (D) shall not in any way be construed as limiting the authority of commissions in existence prior to June 8, 1995, but shall be considered to be supplemental and additional to the authority previously granted to such commissions. Any restrictions in Act No. 19 of the 1975 Regular Session of the Legislature that are not also in the local, special, or general laws establishing a commission in existence prior to the effective date of Act No. 19 of the 1975 Regular Session of the Legislature shall not in any way restrict the authority of commissions in existence prior to the effective date of Act No. 19 of the 1975 Regular Session of the Legislature.
 (2) It is the intention of those provisions to make the commissions provided for in R.S. 33:4574 (A)(2), including those in existence prior to June 8, 1995, political subdivisions of the state, separate and independent of the local political subdivisions in which they operate, and to grant directly to such political subdivisions the power of taxation and such other powers as set forth in this Chapter, all as provided for in Article VI, Sections 19 and 30 of the Constitution of Louisiana.
Finally, note that R.S. 33:4574 (G) addresses the employment of the Executive Director by the tourist commission and provides:
 G. (1) Notwithstanding the provisions of R.S. 42:3, the commission may employ an executive director or a person to fill a comparable position on a contract basis, having such qualifications and under such terms and conditions, including but not limited to provisions for sick and annual leave, as may be fixed by the board of directors, for a period not to exceed five years. Said terms and conditions shall be specified in a written contract, which may contain performance objectives and incentives.
 (2) The commission and the executive director may enter into subsequent contracts of employment. Not less than one hundred twenty days prior to the termination of such a contract, the chairman of the board of directors shall notify the executive director of termination of employment under such contract, or in lieu thereof the commission and the executive director may negotiate and enter into a contract for subsequent employment. The executive director may choose not to enter into subsequent contracts and may terminate his employment at the end of his contract.
 (3) The executive director shall be retained during the term of a contract unless he is found incompetent or inefficient or is found to have failed to fulfill the terms and performance objectives of his contract. However, before an executive director can be removed during the contract period, he shall have the right to written charges and a fair hearing before the commission after reasonable written notice.
Interpreting R.S. 33:4574A(2) and R.S. 33:4574.3, this office has previously determined that these statutes "indicate legislative intent that the bureau, and other tourist commissions listed in R.S. 33:4574
(A)(2), are to act independently of their respective police juries." See Attorney General Opinion 00-175, copy attached.
Our interpretation in Opinion 00-175 is applicable to the Beauregard Parish Tourist Commission, and in combination with the statutory authority afforded the commission via R.S. 33:4574 (G) quoted above, leads this office to conclude that the Beauregard Tourist Commission alone is responsible for hiring the Executive Director.
We hope the foregoing is helpful to you. Should you have other questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
OPINION NUMBER 00-175
November 16, 2000
166 TOURISTS 62-B LEGISLATURE — Acts Bills 90 POLICE JURIES — Powers Functions 90-A POLITICAL SUBDIVISIONS
LSA-R.S. 4574, et seq.
Monroe-West Monroe Convention Visitors Bureau is not required to submit its annual budget to the Ouachita Parish Police Jury for approval, nor does it need the approval of the Police Jury in order to implement its budget.
Mr. C. Lynn Tubb Legal Counsel Ouachita Parish Police Jury P. O. Box 3007 Monroe, Louisiana 71210-3007
Dear Mr. Tubb:
On behalf of the Ouachita Parish Police Jury (the "Jury") and in your capacity as legal counsel to the Jury, you have requested the opinion of this office as follows:
 "Does current state law require that the annual budget of the Monroe-West Monroe Convention Visitors Bureau be approved by the Ouachita Parish Police Jury prior to implementation?"
The undersigned has had the opportunity to discuss this matter with Mr. Elmer Noah, counsel to the Monroe-West Monroe Convention Visitors Bureau (the "Bureau"). Mr. Noah advises that it is the position of both the Jury and the Bureau that in accordance with a 1995 amendment to LSA-R.S. 33:4574 (see Act 47 of 1995), the Jury no longer has any direct involvement with the Bureau's budget. Accordingly it is the position of the Jury and the Bureau that since June 8, 1995, the effective date of the 1995 amendment, the Bureau is not required to submit its budget to the Jury.
Statutory provision for the Bureau is made at LSA-R.S. 33:4574A(2), which provides that the Bureau, and a number of other tourist commissions, are:
 ". . . specifically created as special districts or commissions. Each such commission shall be a body political and corporate and a political subdivision of the state . . ."
Additionally, LSA-R.S. 33:4574.3, entitled "Effect on existing tourist commissions", discusses the effect of 1995 amendment on existing tourist commissions, including the Bureau. Paragraph (B)(2) thereof provides:
 "It is the intention of those provisions to make the commissions provided for in R.S. 33:4574 (A)(2), including those in existence prior to June 8, 1995, political subdivisions of the state, separate and independent of the local political subdivisions in which they operate, and to grant directly to such political subdivisions the power of taxation and such other powers as set forth in this Chapter, all as provided for in Article VI, Sections 19 and 30 of the Constitution of Louisiana." (Emphasis added).
In our opinion, the above-quoted provisions of LSA-R.S. 33:4574A(2) and33:4574.3 indicate legislative intent that the Bureau, and other tourist commissions listed in LSA-R.S. 33:4574A(2), are to act independently of their respective police juries.
We are, of course, cognizant of LSA-R.S. 33:4574.2A, which provides:
 "The commission shall annually submit to the governing authority or authorities of the parish or parishes a budget for its operations during the ensuing year, and the said governing authority or authorities shall have the right to approve or disapprove such budget. Upon approval of the budget the commission shall proceed to act thereunder."
In spite of the provisions of LSA-R.S. 33:4574.2A, it is our opinion that the Bureau is not required to submit its annual budget to the Jury for approval, nor does the Bureau need the approval of the Jury in order to implement its budget. We base this opinion upon our research and examination of the original statutory provisions pertaining to tourist commissions, enacted by Act 19 of the 1975 Regular Legislative Session ("Act 19"), as well as pertinent acts that have amended or added to the provisions adopted by Act 19, in particular Act 47 of the 1995 Regular Legislative Session ("Act 47").
Apparently, there are two types of tourist commissions. As originally enacted in accordance with Act 19, LSA-R.S. 33:4574 only provided for one type of tourist commission. These tourist commissions were (and are) authorized to be created by parish governing authorities [see LSA-R.S.33:4574A(1)] and ". . . shall not be construed to be a political subdivision of the state or of the parish or parishes creating it" [see LSA-R.S. 33:4574E]. In 1995, apparently in response to the decision styled Gallaspy v. Washington Parish Police Jury, 645 So.2d 1139 (La. 1994), the Legislature adopted Act 47, to create (or re-create) an additional type of tourist commission, which commissions are separate and apart from the parishes they serve.
In Gallaspy, the Court ruled that a Washington Parish tax upon the occupancy of hotel rooms and other recreational facilities was a sales tax. The tax had been imposed by the Washington Parish Police Jury to fund the Washington Parish Tourist Commission which the Parish had created earlier that year. In 1995 (and probably currently), many tourist commissions relied upon hotel-motel taxes for revenue. The Gallaspy decision prompted the Legislature to provide for certain tourist commissions to be separate and apart from the Parishes when they were located, in order that those commissions could be constitutionally authorized to impose their own taxes. In accordance with LSA-R.S.33:4574A(2), which was enacted pursuant to Act 47, certain tourist commissions, including the Monroe-West Monroe Convention Visitors Bureau, were "specifically created" by the Legislature and ". . . shall be a body politic and corporate and a political subdivision of the state . . .".
LSA-R.S. 33:4574.3B(2) expresses the clear intent of the Legislature that the tourist commissions listed in LSA-R.S. 33:4574A(2) are to be "separate and independent of the local political subdivision in which they operate. . .". Although it is our opinion that the provisions of LSA-R.S. 33:4574.2A are meant to apply to commissions that are created by parish governing authorities, it is our opinion that the Legislature did not intend LSA-R.S. 33:4574 to apply to those commissions that were created as separate and independent political subdivisions. To determine otherwise would be inconsistent with the Legislature's clear directive that those commissions are political subdivisions, and are to function separately and independently of the parishes in which they operate.
In reaching our determination herein, we have relied upon the following rules of statutory construction:
Clerical and typographical errors in the Revised Statutes shall be disregarded when the meaning of the legislature is clear. La.R.S. 1:5. Verbal inaccuracies or clerical errors in a statute may be corrected in the interpretation thereof whenever necessary to carry out the manifest intention of the Legislature, as gathered from the context. State v. Rogers, 87 So. 504 (La. 1921). To give a statute the effect obviously intended by the Legislature, a manifest error or obvious inadvertence in the use of words may be corrected. City of Shreveport v. Southwestern Gas Elec. Co., 74 So. 559 (La. 1917); City of Crowley v. Police Jury of Acadia Parish, 70 So. 487 (La. 1915). When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La.C.C. Art. 12. In determining legislative intent as expressed in a particular statute, all of the component parts of the statute must be construed together. Washington Parish Police Jury v. Washington Parish Hospital Service District No. 1, 152 So.2d 362 (La.App. 1st Cir. 1963).
We trust the foregoing to be of assistance. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ______________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB/dra